# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
In re:                                                    :    Chapter 11
:
TE HOLDCORP, LLC,[1]                                      :    Case No. 20-11442 (JKS)
:
Debtor.                                          :    **Reference D.I. 115**
:
---------------------------------------------------------x

## MEMORANDUM OPINION[2]

Before the Court is Spitfire Energy Group LLC's ("Spitfire") motion [D.I. 115] to reconsider and amend (the "Reconsideration Motion") the order [D.I. 111] (the "Enforcement Order") and bench ruling [D.I. 102] (the "Enforcement Ruling") enforcing the Court's orders approving the sale [D.I. 216] (the "Sale Order") and confirming the plan of reorganization [D.I. 226]. The Court, having reviewed the Reconsideration Motion and related pleadings, orders and rulings, the facts and case law, and a hearing having been held [D.I. 131] (the "Reconsideration Hearing"), denies the Reconsideration Motion.

## Background

On June 1, 2020, Debtors Templar Energy LLC, et al., an oil and gas exploration and production company, filed voluntary petitions for relief under chapter 11 of the Bankruptcy

---

[1] The last four digits of the Debtor's federal tax identification number are 6730, and the Debtor's mailing address is PO Box 720720, Oklahoma City, Oklahoma 73172. The chapter 11 cases of the following affiliates of the Debtor were closed effective as of July 31, 2020: Templar Energy LLC (4719), TE Holdings, LLC (3115), TE Holdings II, LLC (N/A), Templar Operating LLC (0810), Templar Midstream LLC (3275), and TE Holdings Management LLC (7467).

[2] This Memorandum Opinion cites to the dockets of Debtors' jointly administered chapter 11 cases, Templar Energy LLC, et al., Case No. 20-11441, closed July 31, 2020, and the sole remaining case, TE Holdcorp, LLC, Case No. 20-11442, which remains open for plan administration. The Reconsideration Motion and all subsequent pleadings were filed in TE Holdcorp, LLC, which was originally assigned to The Honorable Brendan Linehan Shannon and reassigned on April 8, 2021 [D.I. 124].

Code, together with a proposed prepackaged plan and a motion to sell substantially all their assets. Spitfire objected to the proposed plan [D.I. 158] and cure amount [D.I. 161] for the master services contract (the "MSC") among the Debtors, Spitfire, and various related parties, governing the disposal of saltwater from Templar's oil wells through Spitfire's saltwater disposal system. In resolution of these objections, Spitfire and the Debtors entered into a stipulation (the "Stipulation"), dated July 9, 2020, agreeing the MSC was an executory contract that could be assumed or rejected, fixing a cure amount, and limiting Spitfire's filing of further pleadings or documents in the cases.[3]

On July 16, 2020, the Court held a hearing on the sale motion and confirmation of the plan [D.I. 219]. Spitfire did not object to the sale. On July 17, 2020, the Court entered the Sale Order, authorizing the sale of substantially all the Debtors' assets to Presidio Investment Holdings LLC, an affiliate of Presidio Petroleum LLC ("Presidio"). On the same date, the Court entered an order confirming the Second Amended Joint Prepackaged Plan of Liquidation of Templar Energy LLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code (the "Plan") and approving the related disclosure statement [D.I. 217]. The confirmation order authorized, among other things, the rejection of all executory contracts not "otherwise rejected, assumed, or assumed and assigned" as of the effective date, including the MSC. The Debtors also filed their designation schedule, indicating the MSC would not be assumed [D.I. 218].

On July 29, 2020, the Debtors filed a proposed amended confirmation order that contained revisions to the third party release provision in paragraph 45 [D.I. 225]. On that same

---

[3] Pursuant to the Stipulation, Spitfire could only file pleadings or documents as necessary to defend against claims or motions or to file general unsecured proofs of claim unrelated to the MSC [D.I. 181].

date, the court entered the amended confirmation order [D.I. 226] (the "Confirmation Order"). The effective date of the Plan occurred on August 3, 2020 [D.I. 230].

On September 11, 2020, Spitfire commenced an action against Presidio in Texas state court arising from the rejection of the MSC (the "Texas Action"). Presidio removed the Texas Action to federal court (the "Texas District Court") and moved to transfer the proceeding to this Court. Spitfire moved to remand and objected to Presidio's motion to transfer.[4]

On October 22, 2020, Presidio filed a motion to enforce the Sale Order and the Confirmation Order [D.I. 44] (the "Enforcement Motion"). The Court granted the Enforcement Motion on certification of counsel [D.I. 52]. Spitfire later moved to set aside that order due to lack of notice [D.I. 58]. The Court vacated its order [D.I. 66] and entered an agreed order [D.I. 72] scheduling a hearing and briefing on the motion.

On January 14, 2021, the Court held a hearing on the Enforcement Motion [D.I. 101] (the "Enforcement Hearing"). On February 12, 2021, the Court issued the Enforcement Ruling, and on February 26, 2021, the Court entered the Enforcement Order. Spitfire filed the Reconsideration Motion on March 12, 2021.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4] *Spitfire Energy Grp. LLC v. Presidio Petroleum LLC*, No. 20-002224 (N.D. Tex. Oct. 26, 2020).

## Standard of Review

Spitfire brings the Reconsideration Motion under Federal Rule of Civil Procedure 59(e),[5] made applicable by Federal Rule of Bankruptcy Procedure 9023.[6] "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."[7] A motion for reconsideration is not a vehicle to relitigate issues the Court has already decided or to present evidence that was available during the case but not presented.[8] The movant bears a substantial burden and must show pertinent case law or facts the court overlooked.[9] "[F]inality of judgment and conservation of judicial resources dictate that Rule 59(e) be sparingly granted."[10]

Under Rule 59(e), a judgment may be altered or amended upon showing: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[11]

Here, Spitfire maintains that only the third ground for reconsideration is at issue.[12] Thus the Court will determine whether reconsideration of the Enforcement Order is necessary "to correct a clear error of law or fact or to prevent manifest injustice."[13]

---

[5] Fed. R. Civ. P. 59(e).
[6] Fed. R. Bankr. P. 9023.
[7] *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (internal citations omitted).
[8] *Bermingham v. Sony Corp. of America*, 820 F. Supp. 834, 856 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994).
[9] *Kloth v. S. Christian Univ. Bd. of Dirs.*, No. CIV. 06-244-SLR, 2007 WL 3036893, at *1 (D. Del. Oct. 17, 2007) ("The standard for obtaining relief under 59(e) is difficult . . . to meet."), *aff'd sub nom*, *Kloth v. S. Christian Univ.*, 320 F. App'x 113 (3d Cir. 2008).
[10] *Skretvedt v. E.I. DuPont de Nemours & Co.*, No. CIV.A. 98-61-MPT, 2009 WL 1649495, at *2 (D. Del. June 12, 2009); *see also* CHARLES ALAN WRIGHT ET AL., FED. PRACTICE AND PROC. § 2810.1 (3d ed. 2002 rev. 2021) ("reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.").
[11] *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).
[12] Reconsideration Hr'g Tr. 22:19–25; 23:1–3.
[13] *In re Maxus Energy Corp.*, 571 B.R. 650, 655 (Bankr. D. Del. 2017) ("The exact meanings of the terms in the third prong of Rule 59(e) remain unsettled, and there fails to be uniform application of an agreed upon definition by courts. With respect to 'manifest injustice,' for purposes of Rule 59(e), various courts have observed the following:

**Discussion**

In support of reconsideration, Spitfire argues the following constitute clear errors of law or fact or amount to manifest injustice: (1) the Court based its ruling on misrepresentations made by Presidio; (2) the Court erred in its interpretation of paragraph 45 of the Confirmation Order rendering Spitfire's opt out of a Plan release surplusage; and (3) the Court failed to apply *Lone Star Industries, Inc. v. Liberty Mutual Insurance* and hold the Enforcement Motion in abeyance pending the outcome of the motion to remand pending in the Texas Action.[14]

    1.        Presidio's Alleged Misrepresentations

Spitfire argues Presidio misrepresented its involvement in the negotiation of the Confirmation Order at the Enforcement Hearing.[15] Specifically, Spitfire contends that Presidio's statements ignored the existence of an agreement among the Debtors, Presidio, and Spitfire.[16] Spitfire alleges that in accordance with the agreement, it did not object to the sale but preserved causes of action against Presidio through the inclusion of an opt out of a Plan release of Presidio in paragraph 45 of the Confirmation Order (the "Opt Out").[17] Presidio, on the other

---

'There is no judicial consensus . . . but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable . . . .'") (internal citations omitted).

[14] 131 B.R. 269 (Bankr. D. Del. 1991).

[15] Spitfire argues the following statements were misrepresentations:
> "[T]o say that the confirmation order prevented [Spitfire] from [objecting to the sale] and then to hold that against my client which had no part in that confirmation order strikes me as incredibly unfair and just another example, Your Honor, of where we believe that the Spitfire entities sat on their hands and chose not to do anything.
> ***
> Again, this is not – really did not have anything to do with Presidio. It was not particularly Presidio's choice. We heard from the debtors that the Spitfire entities wanted to carve us out of the releases and that as far as confirmation that was what was going to happen. We are not party to the confirmation order, we're not creditors."

Reconsideration Mot. at 3 (citing Enforcement Hr'g Tr. at 52:21–53:1; 52:1–7).

[16] Spitfire variously refers to an "agreement," Reconsideration Mot. at 4, and a "deal," *id.* at 2. Presidio denies the existence of any such agreement or deal. For convenience, it is referred to as an agreement in this Memorandum Opinion.

[17] Reconsideration Mot. at Ex. 1, ¶11.

hand, argues the Opt Out, which was negotiated by the Debtors and Spitfire after entry of the Sale Order, is unrelated to the sale or MSC [D.I. 120].[18]

    *a.*    *The Court's Findings*

Spitfire maintains Presidio's misrepresentations "gained traction with the Court," as evidenced by specific findings in the Enforcement Ruling.[19] These findings are in summary: (i) Spitfire did not file an objection to the proposed sale of assets to Presidio; (ii) Spitfire did not object to the Sale Order; and (iii) the Sale Order was not appealed and is final. These findings are facts, discernible upon review of the record, of which this Court can take judicial notice. The findings have no relation to, or basis in, the comments of Presidio's counsel. That these findings indicate Presidio's misrepresentations gained traction is a non sequitur.

It is not enough for Spitfire to allege that Presidio made misrepresentations to satisfy Rule 59(e)'s substantial burden. To meet the standard for reconsideration, Spitfire must show Presidio's alleged misrepresentations influenced the Court's ruling. Spitfire falls short of its burden because it does not make such a showing. The Court's findings in the Enforcement Ruling are supported by the record, and there is no ground for reconsideration.

    *b.*    *Spitfire's Affidavit*

With its Reconsideration Motion, Spitfire introduces, for the first time, the affidavit of its sole owner and chief executive officer, David D. Le Norman (the "Affidavit"). Spitfire offers

---

[18] Reconsideration Hr'g Tr. at 24:12–17; 28:15–19.
[19] The exact findings Spitfire highlights are:
  1. "Spitfire did not file an objection to the sale;"
  2. "Review of the docket reflects that Spitfire did not object to the Debtors' proposed sale of assets to Presidio under section 363;"
  3. "The Sale Order, which was not objected to by Spitfire, was not appealed and is now a final order;"
  4. "The record does reflect that Spitfire did not object to the sale;" and
  5. "The Sale Order, which was not objected to by Spitfire."
Reconsideration Mot. at 3, n.3 (citing Enforcement Mot. Hr'g Tr. at 4:14–15; 4:24–5:1; 5:19–21; 6:4–5; 8:14–15) (cleaned up).

party's failure to object to a section 363(f) sale, given adequate notice and opportunity to object, may result in consent.[23]

    2.    <u>The Opt Out in Paragraph 45 of the Confirmation Order</u>

Spitfire's second point is that its causes of action against Presidio arising from the MSC survived the free and clear sale of the Debtors' assets[24] under what can be described as two theories: (a) the MSC's obligations are covenants running with the land, and (b) the Opt Out in paragraph 45 of the Confirmation Order preserved Spitfire's right to sue Presidio for breach of the MSC. The Court's erroneous interpretation of the Opt Out, Spitfire argues, violates the canon against surplusage.

    *a.*    *The MSC's Obligations*

With respect to Spitfire's first theory, the Court concluded it did not need to determine whether the obligations under the MSC were covenants running with the land because the Sale Order[25] provides for a transfer of the assets free and clear of both covenants and contracts.[26] Because the plain language of the Sale Order supports the Court's conclusion, there is no clear error of fact or law, and reconsideration is not warranted on this basis.

---

[23] *See In re Christ Hosp.*, 502 B.R. 158, 174–75 (Bankr. D.N.J. 2013) (holding that party in interest's failure to object to sale order resulted in consent given adequate notice and opportunity to object) (citing *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002)), *aff'd*, No. CIV. A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014).

[24] Spitfire's argument runs contrary to the point of Bankruptcy Code section 363(f). "It seems clear that creditors whose claims accrued before or during the bankruptcy case and who had an opportunity to participate in the bankruptcy case are bound by any plan or distribution in that case. . . . As a general rule, a purchaser of assets does not assume the liabilities of the seller unless the purchaser expressly agrees to do so . . . ." COLLIER ON BANKRUPTCY ¶363.06 (16th ed. 2009 rev. 2021).

[25] Sale Order at ¶S ("the Debtors may transfer all of their right, title and interest to the Assets free and clear of . . . any and all . . . contract rights, covenants, . . . and interests of any kind or nature whatsoever . . . .").

[26] Enforcement Ruling Hr'g Tr. at 5:12–18; 8:24–25; 9:1.

          *b.*      *The Opt Out*

The Opt Out in paragraph 45 of the Confirmation Order provides, "notwithstanding anything else herein or in the Plan to the contrary (i) [Spitfire] shall not be deemed to be a Releasing Party or a Released Party with respect to [Presidio] . . . ."[27] The Court concluded that the Opt Out did not modify the Sale Order,[28] which expressly provided Presidio purchased the Debtors' assets free and clear of contract rights or covenants.[29] This reading, Spitfire contends, violates the canon against surplusage constituting a clear error of law.[30]

The Opt Out, as interpreted in the Enforcement Ruling, is not surplusage. The Opt Out has meaning because it preserves any claims Spitfire may have against Presidio unrelated to the sale or the MSC. Indeed, this interpretation of the Opt Out coheres with the Sale Order, which provides, "all entities or persons are permanently and forever prohibited, barred, estopped, and permanently enjoined from asserting against [Presidio], . . . or the Assets conveyed in accordance with the APA, any Interest or Claim of any kind . . . ."[31] Reading the Opt Out consistently with the Sale Order in this manner, as the Court observed in the Enforcement Ruling, means Spitfire's claims arising from the MSC are against the Debtors, not Presidio.[32] This makes sense because purchasing the Debtors' assets free and clear of claims was precisely the benefit of the bargain Presidio obtained by participating in the bankruptcy process. As such, the Court's interpretation of the Opt Out does not amount to a clear error of law.

---

[27] Confirmation Order at ¶45.
[28] Enforcement Ruling Hr'g Tr. at 9:2–9.
[29] Sale Order at ¶12.
[30] The canon against surplusage is a canon of statutory interpretation. *See United States v. Jackson*, 964 F.3d 197, 203 (3d Cir. 2020) (stating that, under the canon against surplusage it is the Court's duty "to give effect, if possible, to every clause and word of a statute."). This Court considers Spitfire's argument under the similar rule of contract interpretation against surplusage. *See, e.g., In re G-I Holdings, Inc.*, 755 F.3d 195, 203–04 (3d Cir. 2014).
[31] Sale Order at ¶12.
[32] Enforcement Ruling Hr'g Tr. at 7:23–25.

### 3. Lone Star and Subject Matter Jurisdiction

#### a. Lone Star

Spitfire argues under *Lone Star Industries, Inc. v. Liberty Mutual Insurance*[33] this proceeding must be held in abeyance until the Texas District Court transfers the matter to this Court.[34] *Lone Star* does not apply to the facts of this case. This Court is not deciding a motion to transfer or remand as the court was in *Lone Star*. Unlike the pre-petition underlying litigation in *Lone Star*, the Texas Action arises from the rejection of an executory contract under this Court's Confirmation Order. Moreover, the Enforcement Motion is a core proceeding, whereas the litigation in *Lone Star* was non-core. *Lone Star* has not been applied to require a court to hold a proceeding in abeyance pending the decision of another court on federal subject matter jurisdiction over different claims. Consequently, the Court's entry of the Enforcement Order did not constitute a clear error of law under *Lone Star*.

#### b. Subject Matter Jurisdiction

Spitfire initially disputed the Court's subject matter jurisdiction, but it abandoned this argument at the Reconsideration Hearing.[35] Spitfire's argument, essentially, was that the Court

---

[33] 131 B.R. 269 (Bankr. D. Del. 1991).

[34] Mandatory abstention under 28 U.S.C. 1334 (c)(2) is not at issue in this case, as this is a core proceeding. Nevertheless, a bankruptcy court may abstain from hearing a proceeding in the interest of justice, comity with state courts, or respect for state law, under 28 U.S.C. 1334(c)(1). Permissive abstention, however, should be the exception, not the rule. *See Penson Techs. LLC v. Schonfeld Holdings LLC (In re Penson Worldwide, Inc.)*, 587 B.R. 6, 22 (Bankr. D. Del. 2018) (internal citations omitted); *see also* COLLIER ON BANKRUPTCY ¶305.02 (16th ed. 2009 rev. 2021). Spitfire's arguments for permissive abstention focused on the relationship of the claims in the Texas Action to the case, which Spitfire characterized as attenuated [D.I. 73]. Ruling on the Enforcement Motion did not require the Court to exercise subject matter jurisdiction over the claims in the Texas Action, and thus the Court did not commit a clear error of law in declining permissive abstention.

[35] *Compare* Reconsideration Hearing Tr. 16:7–15 ("So you don't dispute that, that a Bankruptcy Court has jurisdiction to interpret and enforce its own sale and confirmation orders. You don't dispute that fact? . . . No. There's no dispute there at all. What I do dispute is that in this context, okay, the Bankruptcy Court should have held in abeyance until these jurisdictional issues were resolved before the Northern District of Texas."), *with* Reconsideration Mot. at 2 ("Spitfire denies federal bankruptcy jurisdiction over this dispute."). The Court nevertheless analyzes its subject matter jurisdiction because it must assess its subject matter jurisdiction *sua sponte*.

lacked jurisdiction over the Enforcement Motion because the Texas Action was a post-effective date dispute concerning state law claims that did not involve the Debtors.[36]

The Court properly determined the Enforcement Motion was a core proceeding. Under 28 U.S.C. § 157(b)(2), orders with respect to "confirmations of plans" and "approving the sale of property" are core proceedings. The Enforcement Motion sought enforcement of the Sale Order and the Confirmation Order and thus was a core proceeding.

Further, Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." The power the Court retains under Bankruptcy Rule 3020(d) is parallel to the Court's power under Bankruptcy Code section 1142(b).[37] Even though the effective date of the Plan occurred, and the Debtors are not directly involved in this dispute, the Court retains jurisdiction because enforcement of the Sale Order and Confirmation Order is necessary to administer the estates.

Additionally, under the Plan, the Court retained jurisdiction "with respect to all matters related to the Chapter 11 Cases," including, without limitation, matters in connection with the Plan and Confirmation Order and enforcement of orders previously entered by the Bankruptcy Court.[38]

Accordingly, the Court did not commit a clear error of law in concluding it had subject matter jurisdiction over the Enforcement Motion.

---

*Johnson v. California*, 541 U.S. 428, 430–31 (2004) (holding that a federal court must assess its subject matter jurisdiction *sua sponte*).
[36] Reconsideration Mot. at 3.
[37] *See In re Resorts Int'l, Inc.*, 199 B.R. 113, 118–19 (Bankr. D.N.J. 1996); *see also* COLLIER ON BANKRUPTCY ¶3020.04 (16th ed. 2009 rev. 2021) (citing Fed. R. Bankr. P. 3020(d)).
[38] Plan at Art. XII.

## Conclusion

The issues raised by Spitfire in its Reconsideration Motion do not support a finding of clear error of law or of fact or a finding of manifest injustice as would be necessary to grant the requested relief. Therefore, the Reconsideration Motion is denied. An appropriate order follows.

Dated: May 14, 2021

J. Kate Stickles
United States Bankruptcy Judge